UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RODNEY DES JARDINS,

                Plaintiff,

Case No. 2:19-cv-00252

v.

COMMUNITY ACTION ALGER
MARQUETTE,

                Defendant.

---

Plaintiff's Response to Defendant's Motion for Summary Judgment

Now Comes Plaintiff, Rodney Des Jardins, by and through his attorney and in response to Defendant's Motion for Summary Judgment states as follows:

1. Plaintiff filed the instant action arising out of his employment with Defendant.

2. Plaintiff alleges violations of the Elliott-Larsen Civil Rights Act, Americans with Disabilities Act, Title VII of the Civil Rights Act and the Family and Medical Leave Act.

3. Defendant has filed a motion for Summary Judgment.

4. For the reasons more clearly set forth in the accompanying brief, Plaintiff submits that there is a genuine issue of material fact as to all of Plaintiff's claims that warrant denial of Defendant's Motion in its entirety.

Dated: May 4, 2021

s/ Sandra Hanshaw Burink
Sandra Hanshaw Burink (P68619)
Attorney for Plaintiff
shburink@hb-lawoffices.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RODNEY DES JARDINS,

                                            Case No. 2:19-cv-00252

        Plaintiff,

v.

COMMUNITY ACTION ALGER
MARQUETTE,

        Defendant.

_____

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT

<u>Table of Contents</u>

Statement of Issues…………………………………………………………………..4

Statement of Facts……………………………………………………………………5

Standard of Review………………………………………………………………13

Legal Analysis………………………………………………………………………13

Conclusion………………………………………………………………..25

## Statement of the Issues

I.    Is there a genuine issue of material fact as to whether Defendant failed to provide Plaintiff with a reasonable accommodation that warrants denial of Defendant's Motion?

Plaintiff answers: Yes

II.    Is there a genuine issue of material fact regarding whether Defendant discriminated against Plaintiff on the basis of his age and in retaliation for his protected activity that warrants denial of Defendant's motion?

Plaintiff answers: Yes

III.    Is there a genuine issue of material fact regarding Plaintiff's claims under the FMLA that warrants denial of Defendant's Motion for Summary Judgment?

Plaintiff answers: Yes

## I.       Introduction

Defendant, Community Action Alger Marquette ("Defendant") has had issues with its employment practices for some time. Plaintiff, Rodney Des Jardins ("Plaintiff" or "Des Jardins"), found himself involved in multiple complaints of discriminatory practices, for himself and his subordinate.

Unfortunately, the arrival of a new Executive Director did not change the culture; instead she caused further issues, resulting in the instant action. The hostile environment created by Defendant's conduct caused Plaintiff's anxiety to increase, and requiring him to request a reasonable accommodation in order to perform the essential functions of his job.

Instead of accommodating Plaintiff for his disability, Defendant forced him onto an unpaid leave of absence, refused to allow him to return to work and ultimately terminated him. Plaintiff has brought forth claims for age discrimination and retaliation in violation of the Michigan Elliott-Larsen Civil Rights Act; retaliation in violation of Title VII of the Civil Rights Act; violation of the Americans with Disabilities Act Amendment Act for disability discrimination and failure to accommodate and violation of the Family and Medical Leave Act.

For the reasons set forth below, Plaintiff submits there is a genuine issue of material fact as to all of Plaintiff's claims that warrants denial of Defendant's motion.

## II.      Statement of Facts

Plaintiff began his employment with Defendant on November 10, 2014. Exhibit  1, p. 44). He was hired for the position of Support Service for Veterans Family Program Manager, where he served until he was promoted to the Housing Services Director in January of 2015. *Id.* He served in that position until his termination of employment. The Job Description for the Housing Services

Component Director lists 13 separate job functions that the Defendant deems are "essential job functions." Those include the following:

1. Works with AMCAB Housing Policy Advisory Committee and other housing boards to develop program mission and goals in accordance with community needs. Regularly meets with the Policy Advisory Committee and assists in long-range program planning.

2. Develops, recommends  and implements administrative policies and procedures to achieve efficient operations. Monitors, researches, and interprets government statutes, regulations and guidance memorandums; establishes procedures that ensure compliance with government guidelines and requirements.

3. Plans, directs and administers a complete program of housing services including residential rehabilitation and weatherization, new and existing affordable housing developments, and the potential purchase or rental of residential and commercial structures.

4. Oversees the development of new construction projects and assists in the procurement of buildings and facilities. Negotiates related contracts on behalf of AMCAB as directed. Manages the maintenance of AMCAB buildings and properties and participates in long-range expansion planning.

5. Researches and develops the program budget and works with financial administer(s) and the Executive Director to ensure the proper administration of the budget. Prepares status reports on the programs financial status and plans for future needs.

6. Acts as liaison to funding sources and related agencies. Researches and pursues opportunities to maintain funding stability or enhance program funding.

7. Complies and analyzes data, information and records related to program activities. Prepares and presents regular status reports and develops other special reports as requested.

8. Represents AMCAB's Housing Services component at various meetings and conferences. Presents AMCAB's position on a myriad of issues related to housing and general operations and prepares marketing materials as requested. Coordinates AMCAB/Housing programs and operations with other agencies as needed.

9. Promotes public relations by serving on special committees or boards and participating in civic and professional organizations as appropriate. Responds to public inquiries and investigates complaints  regarding Housing Series.

10. Represents AMCAB's Housing Services component by establishing and maintain effective relationships with clients, the public news media, community groups, agency officials, service providers and other interests. Promotes AMAB in general and advocates housing programs in particular.

11. Keeps abreast of new administrative techniques, current issues, and important legislative  developments through continued education and professional growth. Attends conferences, workshops, and seminars as appropriate.

12. Recommends personnel actions including hiring promotion, or termination. Trains, assigns work, evaluates performance, and otherwise supervises housing component staff. Develops and coordinates in-service training for the staff.

See Exhibit 2. The position, according to the job description also requires travel. *Id.*

i.     *Prior Complaints of Discrimination/Harassment Against Defendant*

In October 2017, Amy Lerlie ("Ms. Lerlie") served as the company's Executive Director. Another employee, Stacia Lynn, who was Plaintiff's subordinate, filed a sexual harassment complaint against Ms. Lerlie, as well as a claim retaliation. (Exhibit 1, pp. 50, 72-73). Plaintiff, having experienced a hostile work environment at the hands of his then-supervisor, Ms. Lerlie, also filed a complaint with Defendant and he reported that he was subjected to a hostile work environment. *Id* at 80-83, 85. His complaint was followed with a complaint to the Equal Employment Opportunity Commission ("EEOC"). After Ms. Lerlie was removed from her position, Plaintiff voluntarily withdrew his charge of discrimination. At that point he believed with Ms. Lerlie gone, the work environment would improve. He was wrong.

In May of 2018, Michelle LaJoie ("Ms. LaJoie") was hired into the role of Executive Director.

ii.    *Plaintiff's Complaints of Discrimination against Ms. LaJoie*

Plaintiff experienced harassment and discrimination by Ms. LaJoie and on September 29, 2018, having grown tired of the harassment and discrimination, Plaintiff submitted a written complaint to Defendant. (Exhibit 4, September 29, 2018 Complaint). In that complaint, he provided specific examples of what he considered to be "discriminatory and abusive behavior" by his supervisor,

Michelle LaJoie. *Id.* He described the demeaning manner in which she spoke to him, as opposed to the other directors. He noted that Ms. LaJoie held him to a different standard than his counter parts and that she was quick to assign blame to him whether he was responsible or not. *Id.* He later gave specific examples of how he was treated differently than the other (younger) program directors, including:

- The other program directors were allowed to direct their staff.

- The other program directors were able to manage their budgets.

- The other program directors were able to set their own personal schedules. (Exhibit 1, p. 143)

Despite the different standards of treatment, Ms. LaJoie noted that Plaintiff was receptive to her criticism and took the steps necessary to correct whatever oversight she believed he had engaged in. (Exhibit.5 , p.35 ). In other words, he was a compliant employee.

He informed Defendant in his complaint that the examples he provided were only a "few" specific instances of the unlawful treatment. He was clear in that he believed Ms. LaJoie was holding him to a different standard of performance than the other two program directors at that time, who were both female and about ten years younger than him, and that, **"I feel I am being discriminated against because of my _age_ and gender and the fact that I was part to the previous EEOC complaint that resulted in the departure of the former executive director."** (Exhibit 4) (emphasis added).

Ms. LaJoie was aware that Plaintiff had made the complaint and she was aware that he was accusing her of age discrimination and in retaliation for his prior EEOC activity. (Exhibit 5, p. 50-51). She felt the complaint was unjust and she was provided with an overview of his complaint. *Id* at 52. Further, upon becoming aware of the complaint, Ms. LaJoie immediately met with the other

two directors and questioned them about his complaint and whether they had knowledge of Plaintiff's complaints. (Exhibit 1, p. 134-135). She also asked if they were involved in the complaint as well. *Id*.

### iii.    *Plaintiff's Medical Condition*

In November of 2017, Plaintiff had heart surgery and required time off. (Exhibit 1, p. 25.) When he returned, he provided documentation from his doctor requesting an accommodation. Indeed, the accommodation requested was that he be permitted to work in the Munising office for a limited period of time. *Id*. At that time, it was from December 18, 2017-January 3, 2018. *Id*. Accordingly, he initially returned to working in the Munising office. *Id* at 87-88. The office was set up with a telephone, printer, scanner and computer and Plaintiff was able to perform his job duties without issue. *Id*.

The hostile environment and disparate treatment Ms. LaJoie subjected him to became too much and his health became compromised. Accordingly, he requested medical treatment through the Agency's EAP counseling services beginning June 12, 2018, where he has treated with Patrice Evans, LMSW, CAADC since that time.

Ms. Evans treated Plaintiff during that time (and currently) for his anxiety, as well as his primary care physician, Kurt Olson, MD. (Exhibit 7, FMLA Paperwork). On October 1, 2018, Plaintiff notified Ms. LaJoie and Shari Mahoski ("Ms. Mahoski"), who was the Human Resource Manager at that time, of his need to take a leave of absence for his own serious health condition. (Exhibit 6, October 1, 2018 Leave Request). In his request, he notified Defendant of his need for a leave of absence from October 2, 2018, with an anticipated return date of October 15, 2018. *Id*. He also identified that it was a stress leave at the recommendation of his doctor. *Id.*

In response to his request, Defendant failed to provide Plaintiff with the requisite Notice of Rights under the FMLA. Instead, *Plaintiff* provided Defendant with the required Certification of Health Care Provider for Employee's Serious Health Condition, completed by Dr. Olson. (Exhibit 7). In that certification, Dr. Olson certified that the leave was due to Plaintiff's anxiety and that he was unable to work in the hostile work environment due to the medical condition. *Id.*

Prior to Plaintiff's request to return to work, he provided Defendant with medical documentation from Kurt Olson, M.D., dated October 10, 2018. (Exhibit 8, Kurt Olson, MD October 10, 2018). Dr. Olson notified Ms. Mahoski that he was treating Plaintiff for anxiety and that he was recommending certain accommodations for Plaintiff. *Id.* The accommodations requested was an alternate work location in Munising for a minimum of 30 days.[1] Dr. Olson also opined that Plaintiff could perform the essential functions of his job if he is allowed the alternate work location. *Id.* In addition, Ms. Evans supported the requested accommodation. (Exhibit 9, Patrice Evans, LMSW, CAADC letter). Ms. Evans noted that she was concerned with the severity level of Plaintiff's anxiety and its impact on his physical health. *Id.* She also supported the request for an alternative work location as ***reasonable and appropriate***. *Id.*

Defendant denied that request and on October 12, 2018, Ms. Mahoski requested additional information from Plaintiff. (Exhibit 10, October 12, 2018 Accommodation Response). Plaintiff had already provided medical support for the accommodation, which was recommended by two of his health care providers. (Exhibit 8 and 9). Despite this, Ms. Mahoski claimed to not understand how the accommodation would address his anxiety. *Id.*

In response to Ms. Mahoski's request for additional information, Plaintiff emailed her the next morning, on October 13, 2018. (Exhibit 11, October 13, 2018 email). In his email, which was his

---

[1] The request to work in the Munising office was the same request that Plaintiff had made in November 2017 after his heart surgery, which had been granted at that time without issue.

response to Defendant's request for additional information relating to his accommodation request, Plaintiff reminded Ms. Mahoski that the Munising office was fully integrated with the Agency's phone exchange, making communication no problem. He also pointed out, correctly, that the job description for his position (Exhibit 2) did not require that he work out of the Marquette office and that instead it clearly sets forth that travel would be required to multiple locations. Exhibit 11. He also informed Ms. Mahoski that the anxiety he was experiencing was a direct result of the daily, personal face-to-face interaction with his supervisor. *Id*. The accommodation requested would allow him to perform his job duties, but without having to face the individual causing the stress in the first place. He also informed Defendant that the purpose of the leave was to allow the Agency a chance to investigate his complaints against Ms. LaJoie without his having to work in the hostile environment. *Id* He also agrees to complete the necessary documentation and meet with her or anyone necessary at the Agency. *Id.*

Plaintiff did meet with Ms. Mahoski to further discuss his accommodation request on October 19, 2018. (Exhibit 12, 13). During that meeting, Ms. Mahoski displayed a hostile attitude towards Plaintiff and it was apparent to him that she did not intend to engage in any interactive process to determine a reasonable accommodation. Exhibit 12. Instead, she only came prepared to deny his request to work fully from Munising for a short period of time. *Id.* Despite the hostile attitude, Plaintiff continued to make attempts to resolve the dispute surrounding the needed accommodation. He did this by responding to Ms. Mahoski's October 19, 2018 letter, which he responded to on October 24, 2018. Exhibit 13. He notifies Ms. Mahoski that the counter-proposal from the Agency—that he work part-time in the Marquette office and part-time in the Munising office—was unacceptable and he provided a detailed explanation as to why. *Id*. His response was designed to continue engaging in an interactive process with the Defendant.

In his response, he explains that the proposal for an accommodation by Defendant was not reasonable based on the fact that it would require him to return to the hostile work environment that his doctor recommended he avoid. Exhibit 13. The Agency responded by way of a letter to Plaintiff dated October 25, 2018. Exhibit 14, October 25, 2018 Letter). Once again, Defendant restated its position to deny the reasonable accommodation, instead restating that the accommodation is not reasonable to the agency and providing Plaintiff with a printout of literature on anxiety. *Id*.

On October 29, 2018, Plaintiff once again provided additional information to Defendant. (Exhibit 15, October 19, 2018 Email). He agrees to seek alternative accommodations by discussing the issue with his doctor and he reminded Ms. Mahoski that the purpose of the accommodation was so that he could work, even with his disability (the anxiety).*Id.* He notified Ms. Mahoski that it might take time to obtain the additional information from his provider and he asked on the status of the investigation into his complaints. *Id.*

On November 2, 2018, Ms. Mahoski responded to Plaintiff's October 29, 2018 email. (Exhibit 16, November 2, 2018 Letter). In that letter, Ms. Mahoski notified Plaintiff that the Agency was extending his FMLA until November 16, 2018. *Id.* On December 18, 2018 Plaintiff's FMLA was unilaterally extended a second time by the Agency to December 28, 2018. (Exhibit 17, December 18, 2018 letter). In the interim, Plaintiff was unable to obtain any alternative accommodation from his provider because none existed. As he outlined in his multiple correspondences to Defendant, his doctor informed him he needed to avoid the cause of his anxiety for a period of time—the proposal offered by Defendant did not meet that accommodation.

On January 17, 2018, having not been allowed to return to work, and after having employees inquire on his status, he sent an email to his co-workers. (Exhibit 18, January 17, 2019 Email). The

purpose of his email was to notify his co-workers of his status since he had been off work for an extended period of time. Exhibit 1, pp. 209-211). As far as he was concerned, Defendant refused to provide the accommodation necessary for him to return to work and he had not yet been informed on the status of the investigation. *Id*. He believed he no longer had a job.

On January 17, 2019, Ms. Mahoski submitted a letter to Plaintiff regarding his accommodation request and identifying his email sent. (Exhibit 19, January 17, 2019 Mahoski Letter). When Plaintiff realized that Defendant interpreted his email as a letter of resignation, he immediately notified the Agency that he was **<u>not</u>** intending to resign and that he did not submit his letter of resignation and Ms. LaJoie was aware that he did not intend to resign. (Exhibit 5, p. 70). Despite this, Defendant failed to allow Plaintiff to return to work, thereby terminating him from his position. *Id* at 71.

Thereafter, Plaintiff filed the instant action for age discrimination, retaliation, disability discrimination and failure to accommodate, under the Michigan Elliott-Larsen Civil Rights Act, Title VII of the Civil Rights Act, the Family and Medical Leave Act and the Americans with Disabilities Act Amendments Act.

### III.    Standard of Review

In viewing a motion for summary judgment, the Court must draw all reasonable inferences and view the evidence in the light most favorable to the [nonmovant]" to determine whether there is a genuine dispute of material fact. *Henschel v. Clare Cty. Rd. Comm'n,* 737 F.3d 1017, 1022 (6th Cir. 2013). That means that, in most cases, evidence offered by the nonmovant must be accepted as true and that credibility judgments and weighing of the evidence are improper. *Id.* A genuine dispute of material fact exists if a reasonable jury — viewing the evidence in favor of the

nonmovant — could decide for the nonmovant. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). And where there is a genuine dispute of any material fact, summary judgment is inappropriate. *Henschel,* 737 F.3d at 1022.

The central issue is "`whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo. Ass `n,* 328 F.3d 224, 234-35 (6th Cir. 2003) (quoting *Anderson,* 477 U.S. at 251-52).

## IV. Legal Analysis

### A. There is a genuine issue of material fact regarding whether Defendant violated his rights under the Americans with Disabilities Act.

The Americans with Disabilities Act Amendments Act ("ADAAA") forbids discrimination against a qualified individual on the basis of disability as it applies to hiring and firing. 42 U.S.C. § 12112(a). Prohibited discrimination also includes "not making reasonable accommodations," *id.* § 12112(b)(5)(A).

Failure to Accommodate

> *i. Plaintiff suffers from a disability.*

In keeping with the remedial purposes of the ADAAA, "[t]he definition of disability" under the ADA "shall be construed in favor of broad coverage." 42 U.S.C. § 12102(4)(A). That is because the primary concern of the ADA is "whether covered entities have complied with their obligations and whether discrimination has occurred," not whether an individual's impairment is a disability. 29 C.F.R. § 1630.2(j)(1)(iii).

The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Major life activities include, but are

not limited to, sleeping, caring for oneself, speaking, breathing, concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2)(A). And "the term `major' shall not be interpreted strictly to create a demanding standard." 29 C.F.R. § 1630.2(i)(2).

To determine whether a disability substantially limits major life activities, the regulations direct courts to compare the person claiming a disability to "most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). "An impairment need not prevent, or significantly or severely restrict ... a major life activity" to be substantially limiting. *Id.* Like the term "major life activities," "[t]he term `substantially limits' shall be construed broadly in favor of expansive coverage" and "is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). So long as the impairment "would substantially limit a major life activity when active," that is enough. 42 U.S.C. § 12102(4)(D).

*Hostettler v. College of Wooster* is instructive in this case. The plaintiff in *Hostettler* suffered from separation anxiety and depression after the birth of her child. She requested an accommodation by way of a reduced work schedule. The employer refused to accommodate her and instead terminated her after extending the employee plaintiff's medical leave.  *Hostettler* brought claims for violation of the ADA and FMLA. See 895 F. 3d 844 (6th Cir. 2018).

The defendant in *Hostettler* argued that the separation anxiety and depression did not rise to the level of a disability under the Act. In making that argument, the defendant relied upon the fact that the employee's symptoms were "uncorroborated" and "self-described"; that her doctor's testimony generally described a person with separation anxiety, not the plaintiff specifically; and that because the panic attacks lasted only several minutes, they did not substantially limit any major life activity.

Likewise, in the instant case, the Defendant argues that the "conclusory" statement by Plaintiff's doctor is insufficient to establish a disability. However, Plaintiff supplied Defendant

with medical documentation on multiple times establishing his condition of anxiety. On October 10, 2018 Plaintiff's counselor, Patrice Evans, LMSW, CAADC, even opined that based on her observations she was **"concerned about the severity level of his anxiety and its impact on his physical health."** (emphasis added) (Exhibit 9). Kurt Olson, MD, Plaintiff's primary care doctor, also provided medical documentation substantiating Plaintiff's condition and need for an accommodation. (Exhibit 8) The evidence establishes that Plaintiff's condition rises to the level contemplated by the ADAAA as a disability. It impacts his ability to concentrate and his digestive functions. The anxiety also impacted his sleep.

> ii.      *Plaintiff is a Qualified Individual.*

Defendant argues that Plaintiff cannot establish a violation of the ADA since he was not qualified for the position.

To show that he is otherwise qualified for a position an employee must show that he can perform the essential functions of a job with or without an accommodation. *Hostettler* at 855. Essential functions generally are those that the employer's judgment and written job description prior to litigation deem essential. 42 U.S.C. § 12111(8). Although Defendant argues in support of its position that an essential function of Plaintiff's job required him to be in person, the written job description fails to reference that requirement. Instead, the document, attached as Exhibit xx, lists 13 essential functions, none of which Defendant has been able to identify that Plaintiff was unable to perform. (Exhibit 2).

 Contrary to Defendant's position, Plaintiff can demonstrate that allowing Plaintiff to perform his job in the Munising office for a short period of time was not only possible, but it would not have placed an undue hardship on the agency. Indeed, the current Housing Director, Greg Johnson ("Mr. Johnson), was permitted to work completely remote for several months.

While the modification related to the COVID-19 pandemic, the other department directors, including the Head Start Director, Senior Services Director and the Executive Director were all required to continue working on-site, in office, for the duration of the pandemic.[2] The Senior Services Director continued to work in the office and the Head Start Director worked remotely part-time and in office part-time.

Mr. Johnson, the Housing Director, was permitted to work remotely full time until around Thanksgiving, when he came back to work part time. Although Defendant attempts to use the pandemic as a reason for choosing to allow the remote work, Mr. Johnson remained off work not simply due to the pandemic. **He was directed to stay home due to health concerns**. In other words, Defendant made accommodations for Mr. Johnson's health concerns, but refused to do so for Plaintiff. Exhibit 5, p. 79). This demonstrates that Plaintiff's accommodation request was not an undue hardship and that the accommodation was reasonable and one that should have been made.

### iii.   *There is a genuine issue of material fact as to whether Defendant Failed to Accommodate Plaintiff.*

While an employer may choose between effective accommodations, forcing an employee to take leave when another accommodation would permit an employee to continue working is not an effective accommodation. See *Denese G. v. Dep't of the Treasury*, EEOC Appeal No. 0120141118 (Dec. 29, 2016). Further, the EEOC has recently issued guidance indicating that employer cannot use meetings and trainings as an excuse for not providing telework, which occurred recently in a case before the EEOC, *Jona R. v. Department of State, Agency*, EEOC Appeal No. 0120182063 (Jan. 23, 2020). The employee in *Jona R.* had only asked for situational

---

[2] Although the Governor of Michigan ordered businesses to close down as a result of the COVID-19 pandemic, Defendant was considered to be an "essential business", with its employees "essential workers." Exhibit 5, p.55).

telework to stay home when she had flare-ups of her intestinal disability. The employer defendant claimed that it needed the employee to attend meetings and trainings. Instead, it forced her to use her earned leave. The EEOC held:

> "The [Department of State] also [claims] that it accommodated Complainant by permitting her to take leave when she experienced medical symptoms that made it difficult for her to commute or work in the office. While an employer may choose between effective accommodations, forcing an employee to take leave when another accommodation would permit an employee to continue working is not an effective accommodation.  In this case, the Agency failed to provide Complainant with the effective accommodation that would have allowed her to continue working. Hence, we find that the Agency failed to provide Complainant with a reasonable accommodation for her disability when it did not approve her for situational telework."

Plaintiff was merely asking that Defendant provide him with a temporary change in his work location, which Defendant points out was granted without issue in 2017 when Plaintiff had heart surgery. Indeed, during that time, Plaintiff was successfully able to perform the essential functions of his job in the Munising office. His position has remained the same, as has his job description. Defendant's arbitrary denial makes it clear that the issue is not that Defendant could NOT accommodate Plaintiff; it simply did not want to.

Moreover, Plaintiff's supervisor, and the individual charged with assisting in determining if an accommodation is reasonable, gave shifting explanations as to why Plaintiff's request could not be provided. Initially Ms. LaJoie indicated that Plaintiff had not provided sufficient documentation. (Exhibit 5, p. 55). However, Ms. Mahoski testified that Ms. LaJoie opined the accommodation could not be provided due to the fact that Plaintiff had to supervise employees. (Exhibit 3, p. 19). However, the evidence establishes that the accommodation can be provided because it was for the current Housing Director for his own medical condition during the pandemic.

Defendant also argues that Plaintiff failed to engage in the interactive process. However, Plaintiff did engage in the interactive eprocess as can be demonstrated by his several

communications to Defendant during the time period, including notifying Defendant that he would ask that his doctor explore other types of accommodations that can be made. However, there were no other accommodations that could be recommended because only the one requested would allow Plaintiff to perform the essential functions of his job with a reasonable accommodations. Instead of granting the request, Defendant unilaterally extended his FMLA and refused to provide any other request than part time in Marquette and part time in Munising, which Plaintiff gave detailed explanation as to why the accommodation was not reasonable. Accordingly, Summary Judgment must be denied.

Discrimination Based on Disability

The ADAAA also makes it unlawful for an employer to take an employee's disability into consideration in making any employment decisions.

"To recover on a claim for discrimination under the ADA, a plaintiff must show that he (1) is disabled, (2) otherwise qualified to perform the essential functions of the position, with or without accommodation, and (3) suffered an adverse employment action because of his disability." *Ferrari v. Ford Motor Co.,* 826 F.3d 885, 891 (6th Cir. 2016). As outlined above, Plaintiff can demonstrate he is a qualified person with a disability. He can also show that he suffered an adverse employment action based on his disability.

Contrary to Defendant's position, Plaintiff did suffer an adverse employment action. Although Defendant interpreted Plaintiff's January 17, 2019 email as a letter of resignation, he made it very clear to Defendant that he was not intending to resign. Knowing this, Defendant refused to allow him to return to work, thereby terminating him. Plaintiff can show he was able to work with an accommodation, but that Defendant failed to allow him to. Plaintiff does not have to show that his disability was the sole cause of his termination. *Lewis v. Humboldt Acquisition Corp.,*

*Inc.* 681 F.3d 312 (6th Cir. 2012), but he can demonstrate that it was a factor in the Agency's decision.

There is a genuine issue of material fact regarding whether Defendant violated Plaintiff's rights under the ADAAA by failing to provide a reasonable accommodation and by refusing to allow him to return to work, despite medical documentation showing he could perform the essential functions of his job with the accommodation requested and Summary Judgment must be denied.

    **B.  Plaintiff can show that there is a genuine issue of material fact regarding his claims for discrimination and retaliation that warrant denial of the Motion for Summary Judgment.**

Plaintiff has brought forth claims for age discrimination and retaliation in violation of the Elliott Larsen Civil Rights Act and for retaliation in violation of Title VII of the Civil Rights Act.

Age Discrimination

Plaintiff has brought forth a claim for violation of the Elliott-Larsen Civil Rights Act for age discrimination. A plaintiff may establish a violation of the ADEA by either direct or circumstantial evidence. *Geiger v. Tower Auto.,* 579 F.3d 620 (6th Cir. 2009). "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564 (6th Cir. 2003). (citation and internal quotation marks omitted). "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.* Regardless of the type of evidence submitted, the burden of persuasion remains on the plaintiff to demonstrate "that age was the `but-for' cause of their

employer's adverse action." *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 129 S.Ct. 2343, 2351 n. 4, 174 L.Ed.2d 119 (2009).

The burden-shifting approach used to analyze claims under ELCRA, is the same used in ADEA claims. To set forth a *prima facie* case of age discrimination using circumstantial evidence, a plaintiff must establish the four elements of the well-known *McDonnell Douglas* test: 1) that he was a member of a protected class; 2) that he was discharged; 3) that he was qualified for the position held; and 4) that he was treated differently than others outside of the protected class. *See Allen v. Highlands Hosp. Corp.,* 545 F.3d 387 (6th Cir. 2008).

Plaintiff can establish that he is a member of the protected class as his is over 50 years old and as outlined above, he can establish he was terminated from is position. He and also show that he was subjected to disparate treatment in the way that his supervisor treated him. As outlined above, he was subject to greater scrutiny, demeaned and subject to different terms and conditions.

This "three-part inquiry provides `an allocation of the burden of production and an order for the presentation of proof in [employment discrimination] cases.'" *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 659 (6th Cir.2000) (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). The burden of production shifts between litigants as the analysis advances.*Id.* This Court has explained the relevant burdens at the summary judgment stage:

"On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Cline v. Catholic Diocese of Toledo,*206 F.3d 651, 661 (6th Cir.2000). Thus, the plaintiff must first submit evidence from which a reasonable jury could conclude that a prima facie case of discrimination has been established. *Monette v. Elec. Data Sys. Corp.,* 90 F.3d 1173, 1186 (6th Cir.1996). The defendant

must then offer sufficient evidence of a legitimate, nondiscriminatory reason for its action. *Id.* If the defendant does so, the plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination. *Id.*

As outlined above, Plaintiff can establish a genuine issue of material fact exists as to whether Defendant discriminated against him based on his age that warrants denial of Defendant's Motion for Summary Judgment.

Retaliation

Title VII prohibits discriminating against an employee because that employee has engaged in conducted protected by Title VII. 42 U.S.C. 200e-3(a). The opposition clause of Title VII makes it "unlawful…for an employer to discriminate against any…employee…because he has opposed any practice made…unlawful by this subchapter. § 2000e-3(a). The opposition clause protects not only the filing of formal discrimination charges with the EEOC, but also complaints to management and less formal protests of discriminatory employment practices. *Laster v. City of Kalamazoo,* 746 F.3d 714 (6th Cir. 2014).

A Title VII retaliation claim can be established  "either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation." *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531 (6th Cir. 2008). Here, Plaintiff can establish unlawful retaliation using circumstantial evidence, in which the burden-shifting approach outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case of retaliation  under Title VII, Plaintiff must demonstrate that: "(1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known  by the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal

connection existed between the protected activity and the materially adverse action. *Laster* at 731 (citing *Jones v. Johanns*, 264 Fed. Appx. 463 (6th Cir. 2007).

Plaintiff's burden of establishing a materially adverse employment action is "less onerous in the retaliation context than in the anti-discrimination context." *Laster* at 731. (citing *Michael v. Caterpillar Financial Services Corporation*, 496 F.3d 584 (6th Cir. 2007).

Plaintiff can demonstrate that he engaged in protected activity when he submitted his September 29, 2018 complaint to Defendant. The complaint specifically reported what Plaintiff reasonably believed to be age discrimination by his supervisor, thus satisfying the first element. He can also demonstrate that Defendant was aware as Ms. LaJoie testified the complaint was shared with her, she immediately questioned the other directors about the complaint and she felt the complaint was unjust.

To establish the third element, of the prima facie Title VII retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington.* An act that would be immaterial in some situations is material in others. "This more liberal definition permits actions not materially adverse for purposes of anti-discrimination claim to qualify as such in the retaliation context." *Laster* at 731.

Here, and as outlined above, Plaintiff can demonstrate he suffered an adverse employment action when Defendant terminated him. He made clear to Defendant that he did not intend to resign from his position. Defendant was aware that there was no intent to resign and instead refused to allow him to return to work. That is an adverse employment action.

He can also show a causal connection between his complaint and his termination as Defendant cannot present a legitimate reason for refusing to allow him to return to work other than to state that the Agency decided to accept a resignation it was aware that Plaintiff disputed submitting in the first place. Defendant did not want Plaintiff working there any further and his complaints factored into that decision, which can be shown as outlined herein. Defendant failed to provide an accommodation that it gladly provided to Plaintiff's replacement—an individual who under information and belief did not engage in protected activity as Plaintiff did.

There is a genuine issue of material fact as to whether Defendant retaliated against Plaintiff by terminating him from his position that warrants denial of Defendant's motion.

**C.  Defendant Violated Plaintiff's Rights under the Family and Medical Leave Act.**

The FMLA entitles qualifying employees to take up to twelve weeks of unpaid leave, without fear of termination, when the  leave is taken for, inter alia, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 USC 2612(a)(1)(D), 2614 (a)(1). A "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves…continuing treatment by a health care provider." 29 U.S.C. 2611(11). There are two recovery theories available under the FMLA: the interference theory, pursuant to 29 U.S.C. 2615(a)(2). *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 501 (6th Cir. 2006).

Interference Claim

Qualifying employees who return to work within that 12-week period are entitled to be reinstated to their previous position, or "to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1). "[t]he issue is simply whether the employer provided its employee the entitlements set forth in the

FMLA—for example, a twelve-week leave or reinstatement after taking a medical leave." *Arban v. West Pub. Co.*, 345 F.3d 390 (6th Cir. 2003).

To prevail on an interference claim, an employee must prove that: (1) he was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) he was entitled to leave under the FMLA, (4) he gave the employer notice of her intention to take leave, and (5) the employer denied the employee FMLA benefits to which he was entitled. *See Walton*, 424 F.3d at 485 (citing *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir.2003)). The employer's intent is not a relevant part of the entitlement inquiry under § 2615. *See Arban*, 345 F.3d at 401 ("Because the issue is the right to an entitlement, the employee is due the benefit if the statutory requirements are satisfied, regardless of the intent of the employer.")

In this case, Defendant refused to allow Plaintiff to return to work after his doctor provided written documentation showing he could work with a reasonable accommodation. That documentation was provided on October 10, 2018, before Plaintiff's requested FMLA leave had expired. Instead of allowing him to return to work upon notice that he *could* work, Defendant unilaterally extended his leave on two occasions and then refused to allow him to return to work, terminating him on January 17, 2019. Defendant interfered with Plaintiff's rights under the FMLA when the company refused to allow him to return to work after he presented documentation from his medical provider that he could return *with accommodations*, which as set forth above, Defendant failed to provide. Defendant argues that Plaintiff failed to provide a certificate of fitness for duty, but Plaintiff submits that the medical documentation clearly establishes that Plaintiff could work; he was merely requesting a reasonable accommodation in order to perform his job. At no point did his doctor's state he could not work and needed his medical leave extended. That was a decision made by Defendant.

In addition, and as referenced in Defendant's brief, Defendant failed to provide the requisite notice of rights to Plaintiff upon his request for FMLA leave. The failure is a violation of the Act and entitles Plaintiff's claims to proceed. Defendant's Motion for Summary Judgment should be denied as there are genuine issues of material fact as to whether Defendant interfered with Plaintiff's rights under the FMLA that warrants denial of the motion.

Retaliation Claim

For the reasons set forth herein, and without reiterating what has been set forth above, Plaintiff can also demonstrate that he was retaliated against for taking his FMLA leave. Again, Defendant can point to no factor to explain why he was not allowed to return to work upon notice from his doctor that he could work.

**V.     Conclusion**

There are genuine issues of material fact that warrant denial of Defendant's Motion for Summary Judgment in its entirety.

Dated: May 4, 2021                                       s/ Sandra Hanshaw Burink
                                                        Sandra Hanshaw Burink (P68619)
                                                        Attorney for Plaintiff
                                                        shburink@hb-lawoffices.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RODNEY DES JARDINS,

                                                    Case No. 2:19-cv-00252

                    Plaintiff,

v.

COMMUNITY ACTION ALGER
MARQUETTE,

                    Defendant.

_____

Certificate of Service

    I certify that on May 4, 2021 I filed Plaintiff's Motion for Summary Judgment via the Court's Electronic Filing System, which automatically serves a copy on counsel for the parties.

    Date: May 4, 2021                          s/Sandra Hanshaw Burink