UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| RODNEY DES JARDINS, ) | |
| Plaintiff, ) | |
| v. ) | No. 2:19-cv-252 |
| ) | |
| ) | Honorable Paul L. Maloney |
| COMMUNITY ACTION ALGER ) | |
| MARQUETTE, ) | |
| Defendant. ) | |
| ) | |

# OPINION

This matter is before the Court on Defendant's motion for summary judgment (ECF No. 23). For the reasons to be explained, the motion will be granted in part and denied in part.

## I.

This case involves several employment discrimination claims. Plaintiff Rodney Des Jardins began working at Defendant Community Action Alger Marquette ("CAAM") in November 2014 as Support Service for Veterans Family Program Manager. In January 2015, he was promoted to Housing Services Director, which he served as until his departure from CAAM in January 2019. As Housing Services Director, Des Jardins was responsible for planning, directing, and administering the operation of the housing services program at CAAM. He worked under the supervision of the Executive Director of CAAM and was responsible for supervising his own subordinates in the housing department. Des Jardins worked out of CAAM's main office located in Marquette, Michigan, where the Executive Director, component directors, and the majority of CAAM's staff members are also

stationed. CAAM also has an office in the nearby town of Munising, Michigan, where only one CAAM staff member was stationed during the time relevant to this case.

In May 2018, Michelle LaJoie began her employment at CAAM as the new Executive Director. She took over for Amy Lerlie, the previous Executive Director, who was dismissed after Des Jardins and other staff members filed internal complaints alleging sexual harassment, retaliation, and a hostile work environment against Lerlie. Des Jardins and LaJoie experienced conflict from the beginning of LaJoie's employment. While Des Jardins describes their differences as "harassment" and "discrimination" (ECF No. 27 at PageID.461), CAAM claims that LaJoie identified areas in Des Jardins's job where he needed to improve, particularly his lack of communication with her and CAAM's outside partners (ECF No. 23 at PageID.99). Des Jardins asserts that LaJoie spoke to him in a demeaning manner, held him to a higher standard than the other program directors, and gave him less discretion in directing his subordinates compared to the other directors (ECF No. 27 at PageID.462). But Des Jardins admits that during their discussions about his performance, LaJoie never mentioned his gender, age, taking leave, medical condition, or the previous complaints that he filed against Lerlie (*see Deposition of Rodney Des Jardins*, ECF No. 23-2 at PageID.161).

On September 28, 2018, Des Jardins filed four grievances with the Chair of the Board of Directors of CAAM alleging examples of "discriminatory and abusive behavior" by LaJoie (ECF No. 27 at PageID.462). He listed the specific examples of how he was treated differently than the other directors and the "demeaning manner" in which LaJoie spoke to

2

him (ECF No. 27 at PageID.462).[1] After filing his grievances, Des Jardins requested FMLA "stress leave" on October 1, 2018, for his anxiety disorder that he claimed was caused by working with LaJoie (ECF No. 23-9). The following day, Des Jardins's doctor sent CAAM a Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act) form, indicating that Des Jardins suffered from anxiety due to a hostile work environment (ECF No. 23-10 at PageID.212). The form also stated that Des Jardins was unable to perform "all job functions" for the "period of incapacity," which the doctor estimated to be from October 2 through October 16 (ECF No. 23-10 at PageID.211-12). CAAM approved Des Jardins's FMLA leave for two weeks on October 2, 2018 (ECF No. 23-11).

After CAAM approved Des Jardins's FMLA leave, Shari Mahoski, who works in the Human Resources department at CAAM, informed Des Jardins that he was required to provide a "fitness-for-duty-certificate," signed by his doctor, that certified that he could return to work (ECF No. 23-11 at PageID.214). Without that certificate, Des Jardins could not return to work at CAAM.

During Des Jardins's leave, his doctor provided CAAM with notes (not a fitness-for-duty-certificate) that stated that Des Jardins was "capable of performing all essential job functions if allowed to work in an alternate work location" (ECF No. 23-12 at PageID.216). Thus, Des Jardins requested to work in the Munising office for thirty days. The following day, Mahoski denied that request, and in a letter, she stated the reasons for the denial:

---

[1] These examples included that "other program directors were allowed to direct their staff," "other programs directors were able to manage their budget," and "other program directors were able to set their own personal schedules" (ECF No. 23-3 at PageID.164). Des Jardins claims that he was not permitted to do any of these things.

3

> It is not clear how working from Munising enables you to perform the essential functions of your job as a supervisor, since all the operations and staff you supervise are in Marquette. It is also not clear how this accommodation addresses your anxiety and work-related stress, or how 30 days in Munising will help you return to your usual work location in Marquette.
>
> We are committed to engaging in the interactive process with you to arrive at a reasonable accommodation. However, we need more information about how 30 days in Munising addresses anxiety and work-related stress to the point where it will help you perform the essential functions of your job.

(ECF No. 23-13 at PageID.219).

Des Jardins disagreed with Mahoski about his ability to supervise his staff from the Munising office and claimed that his work location was "irrelevant to the performance of the essential functions of my job" (ECF No. 23-14 at PageID.220). He also explained that working in Munising for thirty days would allow CAAM to complete the investigation into his grievances of LaJoie, and that his anxiety was "a direct result of daily personal, face to face interaction with an abusive supervisor" (ECF No. 23-14 at PageID.220).

In the meantime, Des Jardins remained on leave and the parties began to engage in the interactive process to try to find a reasonable accommodation for Des Jardins's anxiety disorder that would also allow him to perform the essential functions of his job. They could not reach a resolution because Des Jardins would not agree to any accommodation where he had to be in the Marquette office with LaJoie. CAAM proposed multiple modified schedules where he could spend part of the week in Marquette and part of the week in Munising—CAAM even proposed a schedule where he could work 2 ½ days in Marquette and 2 ½ days in Munising—but Des Jardins rejected all of these proposals. During this time,

Des Jardins never provided a fitness-for-duty-certificate, so CAAM continued to unilaterally extend his FMLA leave.

On December 18, 2018, Mahoski sent a letter to Des Jardins indicating that his FMLA leave had been extended one more time until December 28 (ECF No. 23-26). After that, he would exhaust his FMLA leave entitlement. Mahoski reminded Des Jardins that he was not cleared to work because he still had not provided a fitness-for-duty-certificate from his doctor. After Des Jardins exhausted his FMLA leave, he still did not return to work nor provide the required fitness-for-duty-certificate. Even after Des Jardins exhausted his leave, he remained an employee of CAAM. As late as January 9, 2019, CAAM continued to pay its employer-portion of the cost to maintain Des Jardins's employer-sponsored insurances.

On January 15, 2019, the CAAM board informed Des Jardins that after an investigation into his grievances against LaJoie, the board found that they were unsubstantiated and dismissed them. Des Jardins sent a letter to the board the same day indicating his displeasure with the board dismissing his grievances and the fact that his thirty-day Munising accommodation was never granted, that he was "uncertain" about his status with CAAM, and that he had retained counsel to bring actions against CAAM (ECF No. 23-29).

Two days later, De Jardins sent an email to all CAAM employees except LaJoie and Mahoski that he would not be returning to CAAM (ECF No. 23-30). He explained that his departure could not be helped and that he would no longer risk his physical, mental, emotional and spiritual health for his job. When LaJoie and Mahoski learned of his email, they interpreted it as a resignation, and Mahoski sent an email to Des Jardins saying that they

5

accepted his resignation (ECF No. 23-31). In response, Des Jardins claims that he did not intend to resign from that email; rather, CAAM terminated him in Mahoski's email on January 17, 2019 (*see* ECF No. 23-31).

After that, Des Jardins never returned to work and filed the following seven claims against CAAM: (1) violation of the Americans with Disabilities Act for failure to accommodate, (2) violation of the Americans with Disabilities Act for discrimination based on disability, (3) violation of the FMLA–Interference, (4) violation of the FMLA for discriminating against and/or retaliating against plaintiff for exercising an FMLA right, (5) age discrimination in violation of the Michigan Elliott-Larsen Civil Rights Act for termination, (6) retaliation in violation of the Michigan Elliott-Larsen Civil Rights Act, and (7) Violation of Title VII for retaliation (ECF No.1). In response, Defendant has filed a motion for summary judgment on all counts (ECF No. 23).

## II.

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008). The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out an absence of evidence supporting the nonmoving party's case. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The facts, and the inferences drawn from them, must be

viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Once the moving party has carried its burden, the nonmoving party must set forth specific facts, supported by evidence in the record, showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252. The function of the district court "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Resolution Trust Corp. v. Myers*, 9 F.3d 1548 (6th Cir. 1993) (unpublished table opinion) (citing *Anderson*, 477 U.S. at 249).

However, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994)) (quotation marks omitted). A mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734–35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). Accordingly, the non-moving party "may not rest upon [his] mere allegations," but must instead present "specific facts showing that there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)) (quotation marks omitted). In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to

7

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III.

### A. Count I: Violation of the ADA for Failure to Accommodate

To prevail on this claim, the Plaintiff must show (1) he was disabled within the meaning of the ADA; (2) he was otherwise qualified for the position, with or without a reasonable accommodation; (3) his employer was aware of his disability; (4) he requested an accommodation; and (5) his employer failed to the provide necessary accommodation. *Moore v. Hexacomb Corp.*, 670 F. Supp. 2d 621, 626 (W.D. Mich. 2009). In his case, Des Jardins cannot prove the second element—that he could perform his essential job functions with the requested accommodation.[2] This claim cannot survive summary judgment. Fed. R. Civ. P. 56.

The ADA only protects qualified individuals with disabilities. To demonstrate that he is a qualified individual with a disability, Des Jardins must show that he could perform the essential functions of his job with or without reasonable accommodation. 42 U.S.C. § 12111(8). Deference is given to the employer to determine what job functions are "essential." *Id.* An employee's opinion as to the essential functions of a position is insufficient to create a genuine issue of material fact. *EEOC v. Ford Motor Co.*, 782 F.3d 753, 764 (6th Cir. 2015)

---

[2] Defendant first asserted that Des Jardins was not "disabled" under the ADA (ECF No. 23 at PageID.109). But according to the law, to meet the ADA's definition of disability, a person must suffer "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). Working is a "major life event" under the ADA. *Id.* § (2)(A). Viewing this element in the light most favorable to the non-moving party, Des Jardins did have a mental impairment—anxiety disorder—that substantially limited a major life activity—working. Thus, he can meet this element. But because both ADA claims can be dismissed on the basis that Des Jardins cannot show that he was a qualified individual, a lengthy discussion on whether he qualifies as disabled is unnecessary.

8

("[Courts] do not 'allow employees to define the essential functions of their positions based solely on their personal viewpoint and experience' . . . because all employees who *request* their employer to exempt an essential function *think* they can work without that essential function.") (internal citation omitted). Moreover, the general rule in ADA accommodation claims is that "regularly attending work on-site is essential to most jobs, especially the interactive ones." *Id.* at 761.

In its motion for summary judgment, CAAM argues that Des Jardins could not perform his essential job functions with the requested accommodation. CAAM notes that Des Jardins's job is "undisputedly interactive in nature" and that he had to regularly communicate with the Executive Director—who worked in Marquette—as part of his job (ECF No. 23 at PageID.112). Further, CAAM asserts that Des Jardins was also required to supervise his staff in the housing department, the majority of whom worked at the Marquette office. CAAM therefore concludes that it was impossible for Des Jardins to perform these essential job functions with his requested accommodation of working in the Munising office for thirty days. Because this Court must give deference to CAAM in deciding essential job functions, it is apparent that Des Jardins could only perform his essential job functions in the Marquette office, at least in part-time capacity. There is no genuine issue of material fact that Des Jardins could not perform his essential functions with his requested accommodation, which means he is not a "qualified individual" under the ADA. 41 U.S.C. § 12111(8). This claim must be dismissed on summary judgment.

### B. Count II: Violation of the ADA for Discrimination Based on Disability

To state a prima facie case of disability discrimination under the ADA,

>a plaintiff must show that 1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced.

*Tennial v. United Parcel Serv.*, 840 F.3d 292, 306 (6th Cir. 2016). The plaintiff also has to show that the disability was a "'but for' cause of the adverse employment action." *Id.* (citing *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 318 (6th Cir. 2012) (en banc)). For the same reasons explained above, Des Jardins is not a qualified individual who can show that he could perform his essential job functions with the requested reasonable accommodation. There is no genuine issue of material fact whether Plaintiff can meet the second element of this claim—he cannot. This claim must be dismissed. *See* Fed. R. Civ. P. 56.

### C. Count III: Violation of the FMLA–Interference

>To establish a claim for interference under the FMLA, a plaintiff must demonstrate that (1) he is an eligible employee, (2) the defendant is an employer as defined under the FMLA, (3) the employee was entitled to leave under the FMLA, (4) the employee gave the employer notice of his intention to take leave, and (5) the employer denied the employee FMLA benefits to which he was entitled.

*Tennial*, 840 F.3d at 30. While the first four elements of this claim are undisputed, Des Jardins cannot meet the fifth element. Plaintiff cannot show a genuine dispute that he was denied any FMLA benefits because CAAM granted his requested FMLA stress leave, and it even gave him much more than he requested. Des Jardins attempts to raise a genuine issue of material fact on this element by arguing that CAAM denied his FMLA benefits because he was not permitted to return to work and CAAM unilaterally extended his leave, but this argument is misplaced. Whether or not Des Jardins was permitted to return to work is

irrelevant to this last element of an FMLA Interference claim. Plaintiff cannot prove that he was denied any FMLA leave by CAAM because he was given all the leave that he requested. This claim cannot survive summary judgment. *See* Fed. R. Civ. P. 56.

### D. Count IV: Violation of the FMLA for Discriminating Against and/or Retaliating Against Plaintiff for Exercising his FMLA Right

To establish a prima facie case of discrimination or retaliation under the FMLA, Des Jardins must show that (1) he was engaged in a statutorily protected activity, (2) CAAM knew that he was exercising his FMLA rights, (3) he suffered an adverse employment action, and (4) a causal connection existed between the protected FMLA activity and the adverse employment action. *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 283 (6th Cir. 2012). The first two elements of this claim are undisputed: Des Jardins took FMLA-protected leave, and CAAM knew that he was taking this leave. However, a genuine issue of material fact exists as to whether Des Jardins suffered an adverse employment action and whether a causal connection existed between his FMLA leave and the potential adverse employment action.

An "adverse employment action" is defined as a "materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct." *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004). Termination of employment constitutes an adverse employment action in an FMLA retaliation claim. *See Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996).

In its motion for summary judgment, CAAM claims that Des Jardins did not suffer an adverse employment action because he resigned from his position, *not* that he was

11

terminated. While CAAM makes legitimate arguments that Des Jardins's email from January 17, 2019, constitutes a resignation, a genuine dispute exists as to this fact. Although Des Jardins's January 17 email was addressed to "Former colleagues and friends," and it stated things such as "It's become increasingly apparent that I won't be coming back," "[Des Jardins's departure] could not be helped," and "I'm sure housing services will improve now that I'm gone," Plaintiff did *not* send this email to his supervisor nor the Human Resources department (ECF No. 23-30). CAAM then classified this email as a resignation email, without getting explicit confirmation from Des Jardins that he intended to resign. And after LaJoie discovered Des Jardins's January 17 email, she sent him a letter stating that they "understand" his indication not to return to CAAM as a resignation, and that they were terminating his healthcare benefits, credit cards, and access to the computer system and his email address, effective immediately (ECF No. 23-1). This letter could certainly be construed as a termination letter, which would constitute an adverse employment action.

Then assuming *arguendo* that Des Jardins did face an adverse employment action, he must show a causal connection between this adverse employment action and his FMLA-protected activity. When viewing the facts in the light most favorable to the nonmoving party, a genuine dispute is present as to whether CAAM terminated Des Jardins for taking several months of FMLA leave. Because Des Jardins and CAAM could not reach a resolution about an appropriate accommodation for his disability, CAAM continually and unilaterally extended Des Jardins's FMLA leave until his departure from CAAM. Therefore, Des Jardins has successfully shown that there is a genuine issue of material fact as to whether he suffered an adverse employment action, and whether there is a causal connection between

the potential adverse employment action and his FMLA-protected leave. Plaintiff's FMLA Discrimination/Retaliation claim will survive summary judgment.

### E. Count V: Age Discrimination in Violation of the Michigan Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.201 et seq., for Termination

Michigan uses the *McDonnell Douglas* burden-shifting test to analyze age discrimination cases brought under the Michigan Civil Rights Act. *See Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 521 (Mich. 2001). Under the *McDonnell Douglas* test, to establish a prima facie age discrimination case, the plaintiff must show that (1) he was a member of a protected class, (2) he was discharged, (3) he was qualified for the position held, and (4) he was treated differently than others outside the protected class. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). Michigan law also requires that the employee be "discharged under circumstances that give rise to an inference of unlawful discrimination." *See Lytle v. Malady*, 579 N.W.2d 906, 914 (Mich. 1998). If the employer can demonstrate all four of these elements, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *See McDonnell Douglas*, 411 U.S. at 802-03.

Des Jardins's claim that he was terminated because of his age is far too speculative, and there is no evidence that links his age to his departure from CAAM. Des Jardins admitted that nobody at CAAM mentioned anything about his age (*Deposition of Rodney Des Jardins*, ECF No. 23-3 at PageID.161) (stating "no" when asked whether LaJoie "said anything" to Des Jardins about his age). Plaintiff's tenuous claim that he was discriminated against because of his age is premised on his belief that he was treated differently than the

13

other directors by LaJoie and that he happened to be older than fifty. That is not enough to establish a prima facie case of age discrimination under Michigan law. *See Lytle*, 579 N.W.2d at 914. This claim must be dismissed on summary judgment.

### F. Count VI: Retaliation in Violation of the Michigan Elliott-Larsen Civil Rights Act Mich. Comp. Laws § 37.201 et seq.

To establish a claim of retaliation under the Michigan Elliott-Larsen Civil Rights Act, a plaintiff must show that (1) he engaged in a protected activity, (2) the defendant knew of the plaintiff's engagement in that protected activity, (3) the defendant took an employment action adverse to the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action. *See Barrett v. Kirtland Cmty. Coll.*, 628 N.W.2d 63, 70 (Mich. Ct. App. 2001); *Meyer v. City of Center Line*, 619 N.W.2d 182, 188 (Mich. Ct. App. 2000). Michigan also has a heightened causation standard. *Barrett*, 628 N.W.2d at 70. "To establish causation, the plaintiff must show that his participation in [the] activity protected by the [EL]CRA was a 'significant factor' in the employer's adverse employment action, not just that there was a causal link between the two." *Id.*

In this claim, Des Jardins attempted to use the grievances that he filed in September 2018 against LaJoie alleging harassment and abuse as his "protected activity." The causal connection between those grievances and his eventual departure from CAAM is not enough to pass a regular causation standard, let alone Michigan's heightened standard. Des Jardins filed the grievances in September 2018, and he was not (allegedly)[3] terminated until January 2019. Plaintiff's argument that there is a causal connection between the two activities is that

---

[3] For the purposes of the retaliation claims under Michigan law and Title VII, the Court will assume that Des Jardins was terminated, which is a materially adverse employment action.

14

CAAM could not provide a legitimate reason for his termination, so he inferred that CAAM terminated him partly because of the grievances. Plaintiff's attempted inference on the record here amounts to mere speculation. There is no genuine issue of material fact as to whether Des Jardins's termination from CAAM was because of the grievances he filed four months prior. There is no record evidence to establish a causal connection for this claim to survive summary judgment.

### G. Count VII: Violation of Title VII for Retaliation

Similar to establishing a retaliation claim under Michigan law, a retaliation claim under Title VII requires a plaintiff to establish that (1) he engaged in an activity protected by Title VII, (2) his exercise of this activity was known by the defendant, (3) the defendant then took an action that was materially adverse to the plaintiff, and (4) a causal connection existed between the protected activity and the materially adverse action. *See Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). Unlike Michigan law, however, Title VII does not have a heightened causation standard.

As explained in the previous section, even without the heightened causation standard, there is insufficient evidence of a causal connection between the filing of Des Jardins's grievances and his termination. In fact, Plaintiff failed to show any evidence linking these two activities other than mere assumption or speculation. This claim will also be dismissed on summary judgment.

### IV.

The Court finds that genuine questions of material fact remain on only one claim: discrimination and/or retaliation in violation of the FMLA. Accordingly,

**IT IS HEREBY ORDERED** that Defendant CAAM's motion for summary judgment (ECF No. 23) is **GRANTED** in part and **DENIED** in part. Specifically, it is **GRANTED** for counts I, II, III, V, VI, and VII, and **DENIED** for count IV.

**IT IS SO ORDERED.**

Date:   September 23, 2021                                /s/ Paul L. Maloney
                                                          Paul L. Maloney
                                                          United States District Judge